UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFF LOCKWOOD, JOANNE LOCKWOOD,
and VALLEY STATION, LLC,

    Plaintiffs,

v.       Case No. 8:20-cv-1990-JLB-TGW

KELLY OLIVER, NEO EL, and REAL
PEOPLE LENDING, LLC, doing business
as BUSINESS LOAN SOLUTIONS,

    Defendants.
_____/

# ORDER

Plaintiffs Jeff Lockwood, Joanne Lockwood, and Valley Station, LLC move for partial summary judgment on their claim that Defendants Kelly Oliver and Neo El, owners of Defendant Real People Lending, LLC ("RPL"), sold a security to them without a proper license, in violation of Florida Statute § 517.12(1). (Doc. 97.) After careful review of the record, the briefs, and viewing the facts in the light most favorable to Defendants, Plaintiffs' motion for partial summary judgment is **DENIED**.

## BACKGROUND

Mr. Lockwood sought to finance the construction of a project near his home in California and learned from his broker about a "novel and attractive way to do this"

promoted by RPL.  (Doc. 97-1 at 39, ¶¶ 2–3.)[1]  Mr. Lockwood spoke to the owners of RPL, Ms. Oliver and Mr. El, about "their ability to provide the funds [he] needed for [his] project, as well as their experience, expertise and international connections.  They also sent [him] sales brochures about how [he] could achieve [his] goals."  (Id. at 40, ¶ 5; Doc. 97-1 at 4.)  At the time, RPL, Ms. Oliver, and Mr. El did not have licensure as an investment advisor, associated person, or issuer or dealer of securities under Florida Statutes, Chapter 517.  (Id. at 3, 11, 15.)

After talking with Ms. Oliver and Mr. El, Mr. Lockwood entered into an agreement titled "Joint Participation Agreement," whereby RPL agreed to "secure the rights to a bank financial instrument," specifically a standby letter of credit ("SBLC"); "structure the transaction"; and arrange "for the reservation of the chosen financial instrument."  (Doc. 47 at 14–15, ¶¶ 3.2, 3.4; Doc. 97-1 at 40, ¶ 6; Doc. 97-1

---

[1] Plaintiffs' motion includes a Statement of Facts as required by the Instructions Regarding a Statement of Material Facts for a Motion for Summary Judgment, found on the Court's webpage.  See https://www.flmd.uscourts.gov/sites/flmd/files/judges/forms/flmd-badalamenti-instructions-regarding-a-statement-of-material-facts-for-a-motion-for-summary-judgment.pdf.  Contrary to the instructions, however, Defendants' response (Doc. 112) does not include a "Response to Statement of Material Facts . . . admitting and/or denying each of the moving party's assertions in matching numbered paragraphs . . . set[ting] forth a pinpoint citation to the record where the fact is disputed."  Those instructions further notified Defendants that "the Court will deem admitted any fact in the statement of material facts that the opposing party does not specifically controvert, provided the moving party's statement is supported by evidence in the record."  To the extent the parties' statements present a factual dispute, and Defendants have complied with this Court's instructions, the facts are viewed in a light most favorable to Defendants.

at 18.)[2]  The Joint Participation Agreement included an Appendix A titled "Loan Terms," which provided that "[t]his is a non-recourse loan" with terms as follows:

1. [RPL] will loan $30,000,000 USD (thirty million dollars)
    a. Net Proceeds to client: $23,700,000 USD (twenty-three million, seven hundred US Dollars)
    b. Service Fee: 20% (paid at closing from proceeds)
    c. Broker Fee: 1% (paid at closing from proceeds)
    d. This funding does not require repayment of the loan amount of $30,000,000.00 (thirty million dollars)
    e. This funding does not have any interest

(Doc. 47 at 20.)  Appendix A was later supplemented with "Updated Loan Terms" that "replace[d] the Appendix A previously signed" as follows:

1. [RPL] will loan $30,000,000 USD (thirty million dollars)
    a. Net Proceeds to client: $23,700,000 (twenty-three million, seven hundred thousand US Dollars)
    b. Service Fee: 20% (paid at closing from proceeds)
    c. Broker Fee: 1% (paid at closing from proceeds)
2. The term of the loan will be 3 years (36 months)
3. At the end of the term Nov 1, 2022, a $25,000.00 (Twenty five thousand dollars and zero cents) payoff balance is due and no other monies are due after that.  Loan will be considered closed and paid back in full.
4. There is no prepayment penalty.

(Id. at 23.)

Pursuant to the agreement, Mr. Lockwood paid $250,000 to RPL.  (Id. at 15, ¶ 3.3; Doc. 97-1 at 40, ¶ 7.)  RPL then forwarded $200,000 of the payment to a "collateral partner" in Brazil, Robinson Bernardes De Costa.  (Doc. 97-1 at 17–18.)  Mr. De Costa was to pledge collateral to obtain and secure an SBLC.  (Id. at 19–21.)  The SBLC, which was issued by Deutsche Bank in Germany, was to be delivered to

---

[2] To undertake this project, Mr. Lockwood and Ms. Lockwood (collectively, "the Lockwoods") formed Valley Station, LLC, also a plaintiff in this case. (Docs. 112-3, 112-5.)

3

the "monetizer" and one of RPL's "funding partners," Astra Korea Company, whose bank was Hana Bank. (Id. at 22–26.) The attempt to deliver this letter of credit to Astra Korea Company, however, was unsuccessful because the collateral pledged was insufficient to back up the SBLC. (Id. at 24–28.) As a result, the SBLC was not transferred to any other entity and was returned to Deutsche Bank. (Id. at 27.)

Plaintiffs did not communicate or have any dealings with Mr. De Costa, Deutsche Bank, Astra Korea Company, or Hana Bank. (Id. at 41, ¶ 13.) Mr. Lockwood eventually told Ms. Oliver and Mr. El that he "wanted [his] money back" and "they promised to refund it but never did." (Id. at 40, ¶ 11.)

***Procedural History***

Through counsel, Mr. Lockwood sent Defendants a letter demanding rescission of the agreement. (Doc. 97-1 at 79–80.) About a month later, Plaintiffs filed this lawsuit raising several claims, including a violation of Florida Statute § 517.12(1) based on Defendants selling them a security without a proper license or registration (Count I). (Doc. 1; Doc. 47 at 2–3.) Plaintiffs filed a motion for summary judgment as to only Count I against Ms. Oliver and Mr. El. (Doc. 54.)[3] The previously assigned district judge held a hearing on the motion, which was denied without prejudice to allow any party to refile "with additional evidence, such as expert evidence" establishing whether the agreement constituted a security. (Docs. 91, 101.) The matter was then reassigned to the undersigned

---

[3] On Defendants' motion to dismiss, the claims against RPL were stayed pending arbitration. (Doc. 36.)

4

judge.  (Doc. 95.)  On the date of the deadline, Plaintiffs filed a renewed motion for summary judgment as to Count I with an expert report.  (Doc. 97.)[4]

Defendants moved to strike the motion based on a purported delay in disclosing the new expert and, in the alternative, moved for additional time to obtain an expert and file a response to the motion for summary judgment.  (Doc. 99.)  Absent a response as to specifically the request for additional time or a showing of prejudice from Plaintiffs, Defendants were permitted an additional thirty days to file a response.  (Doc. 106.)  Defendants filed a response, and Plaintiffs filed a reply.  (Docs. 112, 114.)[5]

---

[4] Plaintiffs argue that the expert evidence should be "ignored."  (Doc. 114 at 4.)  In all events, the motion for summary judgment is due to be denied with or without consideration of any party's expert evidence.

[5] Defendants appear to request that this Court not rule on Plaintiffs' motion for partial summary judgment under Federal Rule of Civil Procedure 56(d) based on Plaintiffs' purported failure to produce requested discovery as to Mr. Lockwood's "involvement" and "participation" in the agreement.  (Doc. 112 at 8.)  As the Eleventh Circuit has explained, "Rule 56 of the Federal Rules of Civil Procedure contemplates that a court may grant summary judgment without the parties having conducted discovery."  Edgewater House Condo. Ass'n v. City of Fort Lauderdale, 825 F. App'x 658, 664 (11th Cir. 2020) (internal quotation marks and citation omitted).  "If a summary judgment motion is filed before discovery, the party opposing summary judgment may move the court under Rule 56(d) to permit the discovery necessary to oppose the motion."  Id. (internal quotation marks, citation, and brackets omitted).  The movant must "specifically demonstrate how postponing the court's ruling would have enabled him, by discovery or other means, to rebut [the opposing party's] showing of the absence of a genuine issue of fact."  Id. (citation omitted).  Defendants' request, however, suffers several flaws.

First, rather than move for any requested relief in a separate motion, Defendants' request is buried in their response in opposition to a motion for summary judgment.  Second, they do not specify whether the Court should defer ruling on or deny the motion, or permit additional discovery beyond the expired discovery deadline.  In all events, the Magistrate Judge previously denied Defendants' discovery request because the motion was "untimely" and did not

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If this showing is made, "the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial."  Shaw v. City of Selma, 884 F.3d 1093, 1098 (11th Cir. 2018) (quotation omitted).

"A fact is 'material' if it has the potential of 'affect[ing] the outcome' of the case."  Id. (citation omitted).  "And to raise a 'genuine' dispute, the nonmoving party must point to enough evidence that 'a reasonable jury could return a verdict for [him].'"  Id. (citation omitted).  "When considering the record on summary judgment 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'"  Id. (citation omitted).  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation."  Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321, 1324 (11th Cir. 1982) (internal quotation marks and citation omitted).

---

comply with the Local Rules.  (Doc. 64.)  Evidently, Defendants did not pursue the matter and did not object to the Magistrate Judge's non-dispositive pretrial order.  See Fed. R. Civ. P. 72(a).  Finally, Defendants have not specifically demonstrated how postponing the ruling would enable them to rebut a showing of the absence of a genuine issue of fact.  Indeed, summary judgment is inappropriate.  Accordingly, the request is denied.

## DISCUSSION

Plaintiffs are not entitled to summary judgment on their claim that Defendants sold them a security without a license or registration to do so, in violation of section 517.12(1). The text of that section provides as follows:

> No dealer, associated person, or issuer of securities shall sell or offer for sale any securities in or from offices in this state, or sell securities to persons in this state from offices outside this state, by mail or otherwise, unless the person has been registered with the office pursuant to the provisions of this section.

Fla. Stat. § 517.12(1). Accordingly, Plaintiffs must establish that Defendants: (1) sold or offered for sale a security in Florida; and (2) were unregistered in Florida to do so. Id.; see Calabro v. Pares, No. 19-22801-CIV, 2020 WL 7481301, at *3 (S.D. Fla. May 27, 2020), adopted, 2020 WL 7481304 (S.D. Fla. June 12, 2020).

It is undisputed that Defendants were not registered to sell or offer for sale securities in Florida. The resolution of the motion for partial summary judgment thus turns on whether the instrument here constitutes a "security," as contemplated by section 517.12(1).

Chapter 517 of the Florida Statutes, titled "Securities Transactions," provides definitions of words and phrases throughout that chapter in section 517.021, delineating as follows, "When used in this chapter, unless the context otherwise indicates, the following terms have the following respective meanings: . . ." Section 517.021(22) provides that a "security" includes several enumerated instruments.

7

See Fla. Stat. § 517.021(22)(a)–(w).[6]  Relevant here, Plaintiffs contend that the agreement between the parties constitutes an "investment contract," id. § (22)(q), a "certificate of interest," id. § (22)(i), and a "certificate of interest in a profit-sharing agreement," id. § (22)(k).  (Doc. 97 at 6–12.)  They also contend that, separate from those items listed as a "security" in section 517.021(22), the instrument constitutes a security as a letter of credit.  (Id. at 12.)  The Court will address these contentions in turn.

I. **Investment Contract**

The parties chiefly contest whether the instrument constitutes an investment contract.  To determine whether an instrument constitutes an investment contract, Florida courts have adopted the test set forth in S.E.C. v. W.J. Howey Co., 328 U.S. 293 (1946).  An investment contract exists where an individual (a) invests money, (b) in a common enterprise,[7] with (c) an expectation of profits derived solely from

---

[6] "The definition of 'security' under the Florida statute is the same as that under federal law, . . . so [courts] look to federal law in determining whether an instrument is a security." Honig v. Kornfeld, 339 F. Supp. 3d 1323, 1335 (S.D. Fla. 2018) (citations, brackets, and internal quotation marks omitted). Additionally, economic reality, rather than labels, is determinative, and "form should be disregarded for substance." United Hous. Found., Inc. v. Forman, 421 U.S. 837, 848 (1975); Fin. Sec. Assurance, Inc., v. Stephens, Inc., 500 F.3d 1276, 1287 (11th Cir. 2007).

[7] To evaluate whether the parties were in a "common enterprise," the Eleventh Circuit has adopted the doctrine of "vertical commonality." See S.E.C. v. Unique Fin. Concepts, Inc., 196 F.3d 1195, 1199 (11th Cir. 1999). In other words, a common enterprise exists where the "fortunes of the investor are interwoven with and dependent on the efforts and success of those seeking the investment or of third parties," even if the "investor's return is independent of that of other investors." Id. (quotation omitted).

the efforts of the promoter or a third party.  See Githler v. Grande, 289 So. 3d 533, 537–40 (Fla. 2d DCA 2019).

The parties dispute whether each of the Howey prongs is met.  Upon careful review, there is a genuine dispute of material fact as to whether the instrument constitutes an investment contract, and summary judgment in Plaintiffs' favor is unwarranted on this basis.  Indeed, contrary to Plaintiffs' assertions, there is evidence supporting a finding that the instrument—by no means a model of clarity—was a loan and not an investment of money in a common enterprise, whereby Plaintiffs were led to expect profits from the efforts of Defendants.[8]

First, although not dispositive, it is relevant that the Joint Participation Agreement includes an appendix titled "Loan Terms," providing that "[t]his is a non-recourse loan" and that RPL will "loan $30,000,000 USD" to Plaintiffs.  (Doc. 47 at 20, 23.)  Although the appendix originally stated that "[t]his funding does not require repayment of the loan amount of $30,000,000.00," this was later supplemented with the "Updated Loan Terms" providing that: (1) "The term of the loan will be 3 years (36 months)"; (2) "At the end of the term Nov 1, 2022, a $25,000.00 (Twenty five thousand dollars and zero cents) payoff balance is due and

---

[8] Florida courts have held that, unlike an investment contract, a loan, "which is the expectation of a return of the money transferred plus an agreed return, is not an investment which . . . requires an agreement to share in the profits."  Rudd v. State, 386 So. 2d 1216, 1219 (Fla. 5th DCA 1980); see also Tippens v. Round Island Plantation L.L.C., No. 09-cv-14036, 2009 WL 2365347, at *11 (S.D. Fla. July 31, 2009).

9

no other monies are due after that. Loan will be considered closed and paid back in full"; and (3) "There is no prepayment penalty." (Id. at 23.)

Additionally, instead of an investment, the Joint Participation Agreement refers to the $250,000 paid by Plaintiffs as "structuring costs which are needed to secure a financial instrument for project financial request for capital assistance" and "registration costs." (Doc. 47 at 15, ¶¶ 3.3, 3.4.) There is evidence indicating that portions of that money were transferred "for the lease of sufficient collateral to secure the [SBLC]," to pay the referring firm, and to "cover the direct costs related to the transaction." (Doc. 112-9 at 3, ¶ 20.) And rather than presenting risk of failure, the funds were due to be returned to Plaintiffs "in the event that [RPL] fails to secure a financial instrument . . . within sixty (60) banking days" after receipt of the funds. (Doc. 47 at 16, ¶ 3.9.) Notably, based on the record before this Court as of now, the purpose of the instrument may not have been merely to derive profit, but to develop Mr. Lockwood's construction project in California. (Doc. 97-1 at 39, ¶ 2; Doc. 47 at 4, ¶ 20; Doc. 112-4; Doc. 112-8.)

A finding that the instrument constituted a loan and not an investment contract may also be supported by the communications among the parties.[9] For

---

[9] Although Plaintiffs have argued that such communications are irrelevant and should not be considered as parol evidence (Doc. 114 at 5; Doc. 101 at 18), courts have found that the parol evidence rule is inapplicable in these circumstances. See, e.g., Grainger v. State Sec. Life Ins. Co., 547 F.2d 303, 306–07 (5th Cir. 1977); Caiola v. Citibank, N.A., New York, 295 F.3d 312, 330 n.9 (2d Cir. 2002); see also Farag v. Nat'l Databank Subscriptions, Inc., 448 So. 2d 1098, 1101 (Fla. 2d DCA 1984). In all events, assuming Plaintiffs are invoking Florida's parol evidence rule, "evidence of a prior or contemporaneous oral agreement is inadmissible to vary or contradict the unambiguous language of a valid contract."

10

example, Mr. Lockwood himself assisted in formulating the Updated Loan Terms by adding a date "to clarify," "expand[ing]" on item "#3," and adding "#4 to be able to pay off early." (Doc. 112-7.) And in communications with Defendants, he refers to the instrument as a "loan." (See, e.g., Doc. 112-8.)

Simply stated, there are remaining factual disputes. Notably, in support of Plaintiffs' argument that they were not obligated to repay the $23,700,000 "SBLC proceeds," Mr. Lockwood averred that he "was told by Oliver and El that both parties to the agreement . . . would make millions of dollars from the transaction described in the agreement." (Doc. 97-1 at 40, ¶ 6; see also Doc. 101 at 18.) Ms. Oliver's declaration, however, directly contradicts this evidence. She averred that "[t]here were no conversations with the Plaintiffs . . . that they would make millions of dollars from any transaction. The Plaintiffs were seeking a multimillion-dollar loan to develop a project." (Doc. 112-9 at 5, ¶ 36.)[10]

In short, it is surprising that, given the amount of money at stake, the parties were not clearer in stating whether repayment of the "loan" was required.

---

Chase Manhattan Bank v. Rood, 698 F.2d 435, 436 (11th Cir. 1983). Here, the contract's terms do create an ambiguity.

[10] The Joint Participation Agreement provided for a 20% "Service Fee" due to Defendants and a 1% "Broker Fee," to be "paid at closing from proceeds." (Doc. 47 at 15, ¶ 3.6; Doc. 112-6 at 1.) In her declaration, Ms. Oliver avers that the amount "retained by [RPL] represent[s] the closing costs, which include, lender fees of 2%, origination fees of 2%, brokerage fees of 3% to Tower Financial, Inc., direct closing costs of 1%, interest for a period of 3 years of 4% per year." (Doc. 112-9 at 4, ¶ 24.) No interest, however, is referenced in the Joint Participation Agreement or Updated Loan Terms. The original loan terms provided that "[t]his funding does not have any interest." (Doc. 47 at 20.)

11

Notwithstanding, construing the evidence and drawing justifiable inferences in favor of Defendants, Plaintiffs have not established the lack of a genuine issue of material fact, or that they are entitled to judgment as a matter of law on the issue of whether the instrument constitutes an investment contract. Thus, a trial is necessary to sort out these material facts.

II. **A Certificate of Interest and Certificate of Interest in a Profit-Sharing Agreement**

Plaintiffs have also failed to establish that the instrument constitutes a certificate of interest or certificate of interest in a profit-sharing agreement.

Arguing that the instrument is a "certificate of interest" security under section 517.021(22)(i), Plaintiffs summarily assert "[t]he agreement in this case very clearly is a certificate of Lockwoods' interest in the investment. It shows that Lockwood has purchased the rights in a financial instrument (SBLC), which is designed to generate a $23,700,000,00 return on their investment." (Doc. 97 at 11.) Absent legal or factual support, this argument is insufficient. See Resol. Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments . . . .").

As to whether the instrument constitutes a certificate of interest in a profit-sharing agreement security under section 517.021(22)(q), Plaintiffs contend the following:

> [T]he agreement evidences a right for Lockwood to participate in a profit-sharing agreement where both the

12

> Lockwood[s] and RPL are projected to each make millions of dollars. The structure of the transaction was such that Lockwood was sold an interest in a financial instrument (SBLC) to be acquired by RPL which would then be monetized with Lockwood receiving millions of dollars on their investment. RPL, likewise, would also receive millions of dollars.

(Doc. 97 at 11–12.) However, this argument is likewise insufficiently supported. In all events, for the reasons discussed, there are genuine issues of fact remaining as to whether the instrument here is or is not a "profit-sharing agreement." See Tanuggi v. Grolier Inc., 471 F. Supp. 1209, 1213 n.5 (S.D.N.Y. 1979) (noting similarities between "investment contract" and "certificate of interest in or participation in a profit-sharing agreement"); see also Tcherepnin v. Knight, 389 U.S. 332, 338–39 (1967) (deeming instrument both an investment contract and certificate of interest in a profit-sharing agreement); Pawgan v. Silverstein, 265 F. Supp. 898, 900 (S.D.N.Y. 1967) (same). Accordingly, genuine issues of material fact remain as to whether the instrument here is an investment contract or certificate of interest in a profit-sharing agreement security.

## III. Letter of Credit

Plaintiffs lastly assert that the instrument is a letter of credit and therefore constitutes a security. (Doc. 97 at 12.) They reason that, although section 517.021(22) does not list a letter of credit as a security, "securities" is defined by a federal statute, 18 U.S.C. § 2311, to include a "letter of credit." (Id.) They further contend that letters of credit fall "within the ordinary concept of a security." (Id.

(quoting Holloway v. Peat, Marwick, Mitchell & Co., 879 F.2d 772, 776 (10th Cir. 1989)).) There are several flaws with this argument.

First, Plaintiffs rely on the definition of "securities" in a federal criminal statute relating to theft of property. They cite no authority in support of the proposition that the use of "security" in Florida Statute § 517.12 contemplates examples of securities in different statutes, much less specifically a letter of credit. To the contrary, section 517.021(22), which defines "security," confines the types of securities that "includes any of the following" and then enumerates twenty-three items. See Fla. Stat. § 517.021(22)(a)–(w). None of those enumerated items is a letter of credit. And Plaintiffs have neglected to cite any legal authority that section 517.12(22) includes a "letter of credit." The Court is mindful that, absent such legal authority, it is not its role to rewrite that statute to include what Plaintiffs think it should include.

Second, they do not support with factual or legal authority their contention that the instrument here is a "letter of credit" and falls within the ordinary concept of a security, as contemplated by the Florida Legislature in its securities statutes. And even assuming a letter of credit does constitute a security, that does not mean the same is true of a SBLC, which is, by its own terms, a "standby" letter of credit. See Stockton v. First Union Nat'l Bank of Fla., 700 So. 2d 394, 396 (Fla. 1st DCA 1997) (explaining differences between SBLC and commercial or "traditional" letters of credit). Finally, although the agreement between the parties here entailed a SBLC being issued by one entity and delivered to another entity, the instrument

14

between the parties did not necessarily constitute an SBLC. Instead, as explained, there is evidence that may just as well support a finding that the instrument constituted a loan from RPL, not the holder of the SBLC, that required repayment. In all events, for reasons discussed, Plaintiffs have not shown an absence of a genuine issue of material fact or that they are entitled to judgment as a matter of law that the instrument is a security under Florida law.

## CONCLUSION

Plaintiffs' Motion for Partial Summary Judgment (Doc. 97) is **DENIED**. On or before May 27, 2022 the parties are **DIRECTED** to file a joint notice indicating: (1) the status of this case; and (2) the status of any arbitration as to Defendant Real People Lending, LLC.

**ORDERED** in Tampa, Florida on May 13, 2022.

_JOHN L. BADALAMENTI_
UNITED STATES DISTRICT JUDGE